Wright *v.* Clifford.

4-9578                                    243 S. W. 2d 569

Opinion delivered November 12, 1951.

*Rhine, Rhine & Vickrey* and *Howard Mayes,* for appellant.

*E. G. Ward* and *V. E. Upton,* for appellee.

George Rose Smith, J.    This is a suit by the appellant, Ivan Wright, to quiet title to a rectangular tract of land in Phillips Addition to the town of Rector, the tract being 300 feet from east to west and 99 feet from north to south.   The dispute centers upon the true location of Wright's northern boundary.   The appellees, E. H. Clifford and Ina Gabler, own separate parcels that abut Wright's property on the north, Clifford's tract lying east of Mrs. Gabler's.   Wright now contends that the true line should be fixed 14.9 feet north of the line established by the decree below.   Thus the controversy involves a strip 300 by 14.9 feet lying along the north boundary of Wright's land.

At the outset it is suggested that the court reporter's transcribed testimony is not properly before us, for the reason that it has not been approved by the chancellor. This contention is unsound. When this testimony was filed on May 16, 1950, the governing statutes for the Twelfth Chancery District were Act 15 of 1947 and Act 4 of 1949. The former provides that the reporter's transcribed notes shall be treated as depositions and that no bill of exceptions shall be necessary. Hence the chancellor's approval was not needed. We may add that this testimony was transcribed and filed months before the passage of Act 139 of 1951, which undertakes to make the practice uniform throughout the State and requires that transcribed testimony be approved either by counsel or by the chancellor.

On the merits the parties differ in their theories of the case. The appellant relies solely upon adverse possession, taking the position that the descriptions in the various deeds are void for the reason that the plats of Phillips Addition do not show its location with reference to government surveys. The appellees contend, and the chancellor held, that the descriptions are valid. We need not explore this controversy, as the appellees do not claim any part of the land as to which the chancellor quieted the appellant's title, and the only dispute before us is whether the appellant has proved adverse possession of the 14.9-foot strip along his northern boundary.

Wright bought his land in 1946 from D. J. Phegley, who had bought it from George French in 1932. These men testified that each grantor had shown his grantee a northern boundary line lying where Wright now contends the line to be. But the record does not show this line to have been marked by a fence; instead, these witnesses identified it as beginning at a crack in the sidewalk on the east, running thence west to a forked tree, and thence along a ditch to the western boundary. Of course, such a subjective understanding of the boundary would not constitute notice to the abutting owners; so the question is whether Wright and his predecessors took such physical possession of the disputed strip as to put their neighbors

on notice of an adverse claim. As to this issue the litigation is really two cases that must be separately considered.

First, as between Wright and Clifford it is Wright's contention that for more than seven years a gravel driveway has been maintained upon Clifford's segment of the disputed strip. On this issue we think the weight of the evidence to be in appellant's favor. For many years there was a store in the extreme northeast corner of what the court below found to be Wright's property. The driveway in question ran along the north side of this store and was undoubtedly used as a parking place by whoever happened to be occupying the building. Phegley testified that the driveway was there when he bought the property in 1932. He leased the store to appellee Clifford in 1939, and Clifford used the driveway for years. According to Phegley, Clifford once obtained his permission to put additional gravel on the drive during a wet season. There was much other evidence about the driveway—so much that its existence cannot be doubted. As to the user being adverse when the adjoining land is occupied, see *Batson* v. *Harlow*, 215 Ark. 476, 221 S. W. 2d 17.

Clifford himself is the only witness whose testimony may be said to contradict the testimony we have mentioned. Clifford admits that he was Phegley's tenant, but he says that Phegley told him that the store bordered on his north boundary line. Clifford testified that it was he who built the drive, in 1941, and that he assumed the land to belong to George Wright (not the appellant), who then owned the land which Clifford later bought. Clifford admits, however, that he did not ask George Wright's permission to use his land, that he paid nothing for the privilege, and that the building on the land to the north has a driveway of its own. We conclude that the evidence preponderates in favor of the view that for many more than seven years the driveway was adversely used as an appurtenance to the store building on appellant's property. We cannot be certain, however, just what area was occupied by the driveway, and we think it best to remand the cause with directions that Wright's title be quieted

to such area as was devoted to the driveway, with additional proof on this question to be taken.

Second, as to Mrs. Gabler's segment of the disputed strip Wright bases his claim of adverse possession upon proof that he and his predecessors maintained a small outhouse on the property and that a drainage ditch was a visible boundary. On both points the evidence is pretty evenly balanced. We doubt if the mere maintenance of a small outhouse upon a long strip of land would, in the absence of color of title, amount to adverse possession of anything more than the ground actually occupied by the building, with perhaps an easement of ingress and egress. But the proof of adverse occupancy is sharply disputed. Mrs. Gabler testified that the structure was formerly south of the line fixed by the decree and that Wright moved it north onto her property after his purchase in 1946. In this she is corroborated by Eli Busby, who testified that he was employed by Wright to move the building north, and Busby described in detail the equipment that was used and the way in which the undertaking was carried out.

The proof about the drainage ditch is equally inconclusive. Mrs. Gabler testified that the ditch was originally on the south line of her land, but in about 1946 Wright filled in the old ditch and with her permission dug the present one on her property. She also testified that Wright had sought to buy her part of the disputed strip, and there is some corroboration of this statement. The appellant's testimony is to the contrary, and with the evidence about equally poised we do not feel justified in disturbing the chancellor's findings in the Wright-Gabler controversy. This part of the decree is affirmed.